All rise, this court is now in session. Please be seated. Madam Clerk, please call the case. 3-15-031-7. Defeated the state of Illinois athlete by Stephanie Winton v. Richard West. Appointment of the defense attorney. Please proceed. May it please the court. My name is Deepa Punjabi and I represent the defendant appellant Richard West. My intent today was to focus primarily on issue number one, related to the trial court's ruling that it would allow the state to admit rebuttal of evidence at trial of West's 30 alleged prison infractions. Of course, I'll entertain any questions the court has on any of the issues that have been briefed. Richard West's defense theory was that it was not believable, given what West had to lose as an inmate in a prison setting, that he would have instigated a violent confrontation with a correctional officer, and that it was only the correctional officer's pattern of harassment and belligerence that necessitated defensive action on West's part. And to support this theory, he sought to testify about his motive to avoid conflict around the time of the offense. He wanted to testify that he had been trying to avoid trouble to get to his upcoming parole board hearing. And the court ruled that this testimony would then open the door to West's 30 prior accusations of assaulting other correctional officers and inmates over the years. Was that inaccurate? That observation by the trial court? It was in chamber of conference, wasn't it? This was at a sidebar, I believe. Yeah, a sidebar with counsel present. Was it inaccurate that it opened the door? Yes. Was that inaccurate? Our position is that that was an erroneous ruling, that it did not open the door. Okay. And, you know, we don't know how old exactly these alleged assaults were, but there's some indication in the record that they were really too old to have had any relevance or probative value. During West's sentencing hearing, defense counsel represented to the court that all of the prior assaults occurred about 20 years prior to this offense. The state didn't dispute counsel's representation to the court at that time. And the purpose of the open the door doctrine or the doctrine of period of admissibility is to be able to admit evidence that results a false or misleading impression left by the other party's evidence. But here, alleged assaults that occurred years and years ago, decades ago, perhaps, would not rebut testimony about West's current state of mind or his current motive to behave himself because of this upcoming parole board hearing, regardless of how he may have conducted himself in years past. People view Brown, a case that I cited in my brief, as factually on point. In Brown, the defendant testified that he had been previously convicted of petty theft, but had not gotten arrested or gotten into any trouble for the last five years. And the state and the court then cross-examined the defendant in front of the jury about other arrests and convictions, but didn't establish whether those arrests and convictions fell within that five-year period. And the appellate court found that there was reversible error because the defendant's testimony dealt with this narrow time frame, and where the state had not established the relevance of the arrests it sought to admit by showing that they fell within this time period, they could not then claim that the defendant had opened the door to these arrests. And I think a similar reasoning applies here. Now, the state argues that the 30 prior assaults were admissible as character evidence, but West's proposed testimony didn't concern any specific traits of his character. It instead concerned his recent incentive to behave or avoid conflict around the time of the offense due to an external factor, the timing of his parole board hearing. So it wasn't really character evidence. It was more like motive evidence. In the cases cited by the state, the defendant testified that they were a criminal. They had never committed crimes. That's not really the kind of testimony we have here. But even if this court should find that this proper testimony opened the door to any character evidence, at most, it only opened the door to evidence at or around the time of the instant offense. The Supreme Court has held that where the state seeks to admit bad character  evidence should be confined to a time not very remote from the date of the alleged offense. And it just was never established that these weren't, in fact, very old incidents. And to the extent that there's any indication in the record, it seems that they probably were very old incidents. But we have an interesting thing. We have a trial going on, right? That's right. We have a sidebar. Yes. And your client's represented by counsel. Yes. And there was no, they dropped the issue after the sidebar, didn't they? Well, first of all, so this was, they dropped the issue, but by that you mean that the defendant didn't then offer the proper testimony. That's correct. The court noted for the record that defense counsel was informing him that he would not then be offering his testimony specifically as a result of this ruling. So the issue was still preserved. Defendant's failure to testify did not forfeit the issue for review. In Easley, there were somewhat similar circumstances there. The Illinois Supreme Court held the defendant didn't forfeit his constitutional issues by failing to testify because it was clear the erroneous ruling was the reason defendant didn't testify. So there were no factual questions left open for the reviewing court. Similarly here, it's clear that the ruling is the reason defendant didn't testify. Why is that clear? What was the defendant's prior record? Wasn't he incarcerated for a felony? Yes. I'm sorry. Why is what clear? That the ruling is the reason he didn't testify? He didn't testify. He didn't testify. Arguably, he also had some significant prior convictions that could be offered as impeachment. Well, no, no. The defendant did testify on his own behalf. He just didn't offer this specific proffered testimony. All right. I stand corrected. Thank you. Okay. Sure. So, you know, even if this court were to find that the 30 prior alleged assaults were somehow admissible, this sort of evidence should be excluded if the danger of the undue prejudice outweighs the probative value, even if otherwise admissible. Here, we know the prejudicial value was potentially very high. In the trial court's prior ruling, the pretrial ruling on the motion to eliminate, it ruled that the jury would almost unquestionably view this as propensity evidence. And so the prejudicial value was high and the probative value was low. Isn't this all hypothetical? Following up on Justice Holbrook's questions, this never happened. I mean, this is all hypothetical. This is all a scenario that never happened. This is all an inquiry that the judge said, well, what about, you know, this says, well, we might want to have the guy testify about this. And the judge said, well, what about all these prior assaults in prison? And so then the guy doesn't, you know, offer any of this stuff. It's all hypothetical. So there's something about something that just never happened in this hearing. Well, sure, it didn't happen in that he didn't end up testifying because the court ruled if he did, this impeachment. No, the court didn't rule. The court did. The court made a ruling that should you offer this proper testimony that you were trying to stay out of trouble recently because of this upcoming hearing, this will then open the door. I will reverse course on my prior pre-trial ruling and allow the state to then bring in as impeachment these 30 prior prison infractions or alleged assaults. That was the court's ruling. Is that really a ruling? The court's saying, if you do this, well, what about these things? Actually, I think the way it happened, if my recollection serves me, the defense counsel then, prior to having his client testify, said, Judge, you made this pre-trial ruling. I just want to check in and make sure I'm, defendant's going to be, we're proffering, this is what defendant will be testifying to. This doesn't affect your prior ruling. And the state then took the opportunity to say, you know, we argue this does then open the door to these prior incidents. And the state said, you know, and the state heard argument from both sides and said, you know, I think I agree with the state. If you do offer this proper testimony, then I'm going to allow this impeachment evidence to come in. So I would argue it was a ruling. It certainly affected his testimony. To perfect the issue for appeal, he has to offer the testimony. That's not what Easley says. In Easley, the Supreme Court held that. So in Easley, forgive me because I don't remember the exact facts, but defendant was going to offer testimony. The court ruled, should he offer this testimony, I'm going to allow the state to offer this impeachment testimony. And defendant then declined to testify as proffered. And the Supreme Court held that the defendant did not forfeit his constitutional issue by failing to testify because it was on the record that it was the ruling. Was it a complete failure to testify in that case? Or just a failure to testify on a narrow issue? I think it was just a failure. I can't be positive, but I think it was just a failure to testify on a narrow issue like here. And so I think according to Easley, that would support our position that his failure to testify did not forfeit this error. And, you know, he put on the record, okay, I'm going to decline to offer this testimony because of this court's ruling. And so our position is that he did not forfeit the constitutional issue per Easley. What was the testimony that this defendant was going to be proffering? The testimony he was going to be proffering was that, so his theory was that he was not the aggressor. This was an officer, correctional officer that had been harassing him in the past, and this was a continuation of that pattern. And he wanted to testify that I had a parole board hearing coming up. He never said exactly when, but the implication was that it was in the near future. And so I had been trying to stay out of trouble. I had been trying to behave myself around this time. And that would have supported and bolstered the credibility of his account that he was not the aggressor in this incident. So because... He was going to testify he had no motive to act in an aggressive manner towards Cochran. That's correct. That he, in fact, had a motive to try to lay low. And the state's theory was that he instigated this conflict, and he wanted to offer this testimony to show that it was not believable, given his upcoming parole board hearing, that he would have instigated this conflict with this correctional officer. His account was more believable that he was not the aggressor and was just acting defensively. So in ordinary language, the sidebar representation by the trial court, they thought better of it because they didn't want these 30-some-other instances of altercations with guards to come in. That's correct. It would have been highly prejudicial as the trial court recognized in the pretrial ruling. It would have likely been considered by the jury as propensity evidence. And so he had little choice then but to decline to offer this testimony that would have supported his theory. It seems to me that there's a lot of missing information. I mean, this isn't very clear if this was going to be an offer of proof. I mean, there's a lot of missing stuff here. If this was going to be a motion in limine or something like that that was going to be offered to the judge so there could be a record of this, and now it's all of a sudden coming up on this appeal. So there was a motion in limine, and then the court reversed course mid-trial. Well, the motion in limine was about... As impeachment. Right. Right. Right. So then all of a sudden they come up and say, what about our earlier motion in limine? And then this other thing comes up that's sort of unclear about all the details, right? Right. But to the extent that we have some lack of clarity on the details, it was the state's burden to establish the admissibility of this evidence it wanted to offer as impeachment. You know, it's the proponent of the evidence, their burden to establish its admissibility. There is some lack of clarity about these prior incidents when they occurred. But I would submit that the proffer was specific enough to preserve the issue for appeal. Well, when you say the state's burden, what you're saying on this appeal is that you were prevented, your client was prevented from showing this evidence that you wanted to offer, right? That's right. That's right. Not the state. You wanted to offer some evidence. Right. And so...  The evidence that the defendant, was that the defendant wanted to testify that he had a parole board coming up, a parole board hearing coming up in the near future, and because of this parole board hearing, he had a lot to lose. He didn't, he was trying to stay out of trouble at this time. He wouldn't have tried to instigate a conflict with a correctional officer when he had this parole board hearing coming up, that he had been trying to behave himself because of this parole board hearing. And that would have directly supported his theory, that he was not the aggressor here, that it was Officer Cochran that was continuing his pattern of aggressive behavior towards this inmate. So he had a motive just to be a good guy? He had a motive to avoid conflict. I just want to use my remaining time briefly to point out that the error here is of constitutional magnitude, because he was prevented from testifying on his own behalf. It chills his right to testify on his own behalf. And so to be considered harmless, the state was subjected to a heightened harmlessness standard here. To be considered harmless, the state would have to show it that it appears beyond a reasonable doubt that the error at issue did not contribute to the verdict obtained. These prevented because the state made a representation, they're going to bring in 30 other incidents of aggressivity by the defendant. But that one, yes, but that should not have been allowed in. It was too remote in time. Well, it never was offered. Well, what was never offered? I mean, the defendant didn't take the stand. So the defendant did take the stand. He just didn't end up testifying to this. He didn't testify to that motive. That's correct. Okay. So he never testified to that motive. Wouldn't it in a trial at the time the state attempts on cross an objection by counsel as to the admissibility? Well, the counsel did object at the sidebar. That record of 30-some incidents? I'm sorry? That record of 30-some incidents? Counsel did object at the sidebar. And when he learned that the jury would be hearing this, he declined to offer the testimony. But, you know, in Brown, the appellate court says it's the state's burden here to establish the admissibility of the impeachment evidence. And that just wasn't established here. And you're denying an opportunity to do that. You're relying on Easley in support of the argument that there's a constitutional violation because he didn't testify to a certain topic. That's correct. But you don't know if Easley was a defendant who failed to testify or testified and narrowed his testimony. I believe he testified and didn't. But if my memory serves me. And I apologize, Justice Holder. No, no, no, it's fine. Sorry. Were there any other questions? Yeah, as to the second issue. Yes. It wasn't people versus Adams that beat your argument on the second issue. Adams dealt with a similar argument about eventually officers testifying, you know, when the argument was that these officers testified about what these officers would have been correct in their testimony. Your second issue. Sure. So in my second issue, we were challenging the state's argument that the jury should consider the state's witnesses credible because they're experienced officers. And forgive me because I can't recall the facts or the ruling of Adam. I do know there's numerous cases that decry this type of argument where the jury is asked to accord credibility or accord weight to the credibility of officers merely based on their status as officers. And the prejudice of this error, too, it worked in tandem with the prejudice from the first error. And so, you know, on the one hand, you have the trial court's ruling impermissibly discouraging West from preventing evidence that would have bolstered his credibility that he was not the aggressor. And on the other hand, you have the state improperly bolstering the credibility of its witnesses based on their status as officers. And the reason I bring up Adam is I'm acutely aware of it because I was the author on the appellate court level and the Supreme Court did not agree with our opinion. The argument in Adam's was that prosecutors improperly bolstering an officer's testimony should be believed because they would not risk their credibility, jobs, or freedom by lying on the witness stand to that amount of plain error because it wasn't raised well. At the appellate level, I found it to be plain error. The Supreme Court didn't agree with our opinion and reversed and said no, that's not plain error. And so I think Adam sort of... And the statements at the trial level in Adam's were really a lot further than what happened in this case. So I think Adam sort of defeats the argument of what happened in this case with all due respect. That's the reason I raised Adam's. Because in Adam's they said, well, these are police officers. They're not going to lie. They're not going to risk their pension. They're not going to risk anything. And they didn't go as far as the facts in Adam's in this case. Well, but here you have the state... This argument goes to all four of their witnesses. It's not a de minimis error. It's not a de minimis... This was a significant part of their argument. But I appreciate what you're saying, Your Honor. Back in 1981, People v. Wallace said that you can comment on credibility. Thank you. You can comment on credibility, but there's since been authority that commenting on credibility just... or asking jurors to accord credibility to a witness simply based on their status as an officer is improper, that that constitutes error. Apparently not in the Adam's case. The Supreme Court said it. I think that's what justice is. When was Adam's decided by the Supreme Court? 2012. Was it cited by either party? I'll ask that. Sorry. Did you cite Adam's? I don't think he's... Actually, I don't think... I don't think the state did. The only reason I ask that question is looking through the case law that you did cite in your brief. There is a very recent case law. There's one 2012 case. Sometimes, you know, when you're hearing these things, you rely on other briefs that other people have filed. Sometimes, Justice Carter pointed out to me something I didn't know, and that is the Adam's case. I wasn't citing it. Adam's is a case where the Supreme Court went into detail about this. Because I thought, like you did in your argument, that sometimes when you're relying on... Sometimes I thought using these officers and saying these officers... I thought for a long time, that's sort of unfair. And that's what your argument was. Sure. And the state says, oh, no, it's not unfair because you're going to the credibility... You can argue about the credibility of the witnesses. But I thought using the power of the state and saying, well, look, these people aren't going to... They have a lot of experience. Well, the Supreme Court didn't agree with that position. Yeah, and I apologize. I'm not familiar with that at this moment. I'm happy to offer some briefing on that in case you'd like me to address it. The state didn't cite it either. It's a recent decision from the Supreme Court. And so in Adams, they said, oh, no, it's the... You know, in the Adams case, they said, nope, you can... In the holding, they said that a prosecutor's closing argument, the defendant testified that prosecutors... They held that a prosecutor's closing argument that police officers' testimony should be believed because they would not risk the credibility, jobs, freedom by lying on a witness stand. Let's see. The prosecutor's closing argument that police officers' testimony should be believed because they would not risk the credibility, jobs, or freedom by lying on a witness stand. And they were advocating Pupil v. Bennett. It did not amount to plain error. And they were advocating an earlier case law. Sure, yeah. It's just a good point to remember. Anyway... Thank you, Your Honor. And that being, like I said, that surprised me. It does seem unfair. I mean, and here particularly, you know... Well, the Supreme Court has broken those. Yeah. Okay. They're last. Were there any other questions, Your Honor? No. Thank you. Counsel? May it please the Court, Your Honors, Counsel? My name is Stephanie Raymond. I represent the people of the state of Illinois in this matter. This matter stems from an incident that occurred at Hill Correctional Center on July 31st. There was one prior incident between Officer Cochran and defendant. It was a verbal altercation on July 25th. Prior to that, there's no other record of any other incidents. The incident that occurred on July 31st, however, involved Officer Cochran, who was working as an assist, signing inmates in and out, checking IDs, checking their passes before they go to the yard. And defendant came past Officer Cochran with what Officer Cochran testified to as a scowling, mean look. And he asked, Officer Cochran asked defendant what his problem was. And defendant replied, you motherfucker, and then proceeded to go out to the yard. Officer Cochran then followed defendant out to the yard and asked him to come back in to speak with the supervisor. At that point, Officer Cochran asked defendant for his ID. Defendant initially replied with, why, I haven't done anything. And Officer Cochran testified that he thought defendant was reaching for his ID and instead struck Officer Cochran with a closed fist. As counsel mentioned, prior to trial, there was a motion in lemonade to exclude 30 prior incidents that defendant had staffed in inmate assaults while he was incarcerated. Those were excluded, and then during the sidebar, defense counsel asked if, essentially could he ask defendant if he was trying to stay out of trouble to get a parole board hearing. Defendant did not testify to any of that, nor did he offer proof of what his testimony would contain, what the staying out of trouble meant, even an informal representation of what his testimony would be regarding his staying out of trouble for this parole board hearing. The defendant would not be entitled to a new trial where his testimony would have opened the door to his prior bad acts. If he testified, if he testified to what defense counsel wanted to ask him, which was was he trying to stay out of trouble, he would have put his character directly at issue, which then would require the people to present evidence refuting his violent behavior. Defendants, again, if he would have testified to not being a troublemaker, he would have then intentionally misled the jury by inferring that I'm a peaceful person. The Illinois court said no. Yes and no. Isn't he really saying that apparently the defense attorney was inquiring at a trial court in a sidebar, am I correct? I guess trying to get an anticipation of what a ruling might be that he intended to put the defendant on the stand and ask him a question about an upcoming parole board hearing, which is a rationale for why his version of the events would be accurate, am I correct? Correct. So is that going to that he's not a troublemaker? Would that allow on the proffering of these 30 incidents that were in the motion in limine that were not going to be permitted? Would that not at the trial allow for an objection by the defense attorney at that point? And then an argument ensue thereafter outside the presence of the jury as to the appropriateness of the admissibility of these third incidents? It would have if that would have taken place. It's the people's position that if he would have testified that he, I'm not a troublemaker, I'm trying to stay out of trouble. But that would then place his character at issue as defense. The counsel stated he was trying to get at his motive, so to speak, for not getting into trouble. I do have a question about that. We're characterizing him as not a troublemaker. I don't think that's really necessarily what this testimony would allow you to conclude. I mean it's just a motive. He had a version of the events. What was his version of the events? His version of the events was that he was provoked essentially by Officer Cochran in that Officer Cochran grabbed him and then he did make contact by slapping his hand away. There were two other correctional officers who testified that they did in fact see defendant strike Officer Cochran. We know that. I'm talking about him, his version. His version is just that this officer had a history of harassing him on his way out to the yard. His version is that he did not speak to Officer Cochran and that he continued out to the yard. And then Officer Cochran came and got him, grabbed him, and he pushed away. Okay. So he just was wanting to testify that I have a parole board hearing coming up and depending on the pattern of questioning that I would not have instigated this physical assault, right? Correct. And the state is saying oh if you do that we're going to say the limonene is erased now and 30 other prior incident reports are going to be introduced. Correct. And you had a judge that says well I guess you're right in the sidebar. Right. Correct. Nor did he offer any, there was no offer of what this testimony would be. Again according to the record it was essentially I would like to ask defendant if he was trying to stay out of trouble to get this parole board hearing and his answer would be yes. There was no, there was nothing else offered as to what staying out of trouble, there was no clarification at all. It was just that and then it was dropped and they proceeded. So it's the people's position that without any offer the issue has been forfeited. You can't engage in hypotheticals as to what he would say and so forth. And the Illinois courts have determined that if a defendant makes a statement intending to mislead the jury regarding his criminal misgivings then the people are then allowed to present evidence for impeachment and refutable purposes which is what we would have here. So exactly what is your understanding of the offer of proof, the defendant's offer of proof? Mine of what the defendant would have offered as proof just that defense counsel would have asked were you trying to stay out of trouble to get this parole board hearing and defendant would have said yes. There's nothing else in the record as far as what else would have been said or what any, that was it. So I mean even, there was no even like a general representation or a general, it doesn't have to be specific but it was, it wasn't even general. It's the people's position that it was not general. There was nothing saying what this, you know, other than I'm trying to stay out of trouble, yes, okay. So the people's position is that the issue has been forfeited. What happened to the Adams case? I did not cite that case. Never a bad idea to do a little sweep of research before you hand in the brief to see whether the third district has ruled on the issue. Never a bad idea. Yes, ma'am. I just want to, Justice Carter hadn't been on this panel, I wasn't aware of the Adams case and it really does sound like it's right on point. We got reversed on that. You can see it still hurts. It doesn't hurt anymore, that's correct. Regarding, I mean regarding just a brief comment on the actual comments that were made as to credibility. I realize that that's sort of been dealt out already but it was just that these people have worked at this institution for these amount of years. It's your job to weigh credibility. If there are no further questions. Oh, on the sentencing hearing, okay. So the third issue was defendant contends that the trial judge improperly relied on these 30 incidents as an aggravating factor. However, the trial judge makes just note of those incidents. His language is such that there's these 30 incidents, you're in the system for these, the tracking system through the prison for these 30 incidents. And I have the trial judge noted he had no details, he had no timelines. He relied on other aggravating factors such as the victim impact statement, the pre-sentence investigation report itself and the defendant's prior conviction report. He also relied on the statute for murder and unlawful restraint, which is why he was incarcerated. And deterrence for others, specifically commenting on the setting that this is a prison, there's a balance between inmates and correctional officers that basically things can go wrong in that setting and deterrence for others is important. It's the people's position that he did not improperly rely because from the language that he used discussing this aggravating factor, it was What was the aggravating factor? The 30 incidents. Yeah, and what's wrong with it? Yeah, well, that's what the opposing side is saying. The defendant contends that he improperly relied on this and that that is why he's sentenced. The defendant was sentenced to five years. Well, improperly relied means you can't consider it or you can consider it but you shouldn't give it so much weight. What's the issue? Shouldn't give it so much weight. So he can rely on it, but it was given too much weight. Correct. There were plenty of aggravating factors, very few mitigation, if any, in this case. So there were plenty of aggravating factors that the trial judge did discuss. Thank you. Counsel? In the trial judge reliance incident, in sentencing, can't consider them? To clarify, the argument was that the trial judge should not have relied on them at all. At all. At all. And the trial judge did appear to rely on them, particularly where he mentioned it as an aggravating factor at the sentencing hearing and then repeated it on the motion to reconsider and said this was one of the factors I considered in my sentence. Why can't the trial judge rely on them? Well, because there were just, you know, you have a due process right to be sentenced on the basis of accurate and reliable information and there were no indicia of reliability here. Did they stipulate to the accuracy of it? No. Not at all. It wasn't in the PSI? It was in the PSI and the defense counsel stipulated to the existence of this representation. He did not stipulate to the accuracy of it. And there is Supreme Court authority that has ruled that prison disciplinary records can come in, but those cases are distinguishable because all of those cases are cases where you have records officers coming in to testify to say on this date, this infraction occurred, this was the sanction that was imposed. For example, in one of the cases in Ward, which I did not cite, and I don't think the state cited it, but people view Ward as a case where they allowed prison infractions and inmates' records to come in and sentencing and aggravation, but there you had a records officer come in to explain these are the dates and natures of the infractions. There was a hearing for each of these at which a disposition was arrived. The burden of proof was a preponderance of the evidence and if that burden was not met, that infraction doesn't appear on this list. Here, I mean, we don't have any of this. There should be some addition of reliability. I mean, here, it's just a list of we don't know what. Someone telling somebody taking down information, looking at something from his IDOC file. We don't know what it was. If it was just a list of how many times he's been charged, was there a hearing for these things? We really have no idea. Our position is there just wasn't sufficient addition of reliability here to comply with the process. If I could address the other arguments. I know this court has made reference during my argument and during the state's argument that none of this ever happened. Our position is there was a ruling here. Defense counsel asked the court prior to defendant's testimony because he was seeking a ruling without, he didn't want to endanger letting the cat out of the bag and having the jury already hear all this stuff and then objecting afterwards. He was seeking a ruling prior to having the testimony come out and having this information come out that he thought would be so harmful for the jury to hear. With respect to the specificity of the proffer, the state argued that the proffer was not sufficiently specific to preserve the error here. But our Supreme Court, I think in LaPointe, our Supreme Court said, a proffer doesn't have to include every detail of what the actual testimony is going to be. What was the proffer in this case? Was that a sidebar? The discussion was at a sidebar. So you're saying that that's a proffer and the statement by the trial judge in a sidebar is a ruling. That's correct. He was seeking a ruling and he said, you know, should he testify to this judge, you're not going to reverse curse on your ruling, you're right, correct? And the state piped up and said, no, then we are seeking to let all of this history in. And the judge said, yes, I'm going to rule that that can come in then. I'm ruling that will come in should he testify that way. There's always situations where at a sidebar you get a disappointing informal ruling from the court. What defense counsel does, if the ruling is against defense counsel or what the state has to do, if the ruling goes against the state, is rethink on their feet. And Justice Carter and Justice Holdridge have spoken about this. This is so hypothetical because in my mind, had defense counsel just formulated a really narrow question to his client in the last two years, have you had any disciplinary proceedings? I don't think the door would open. So the court ruled that it was open. Okay. I understand your point, but I think that my colleagues have made some valid, expressed valid concerns about this is very hypothetical. So how would you address that? I mean, you're saying that just based on the court's ruling, defense counsel would be done? And you just wave the white flag? Well, had counsel then entered into this territory? Tread lightly, counsel, really is what the trial court said. My understanding is that the court was saying, this is coming in. Should you enter into this arena of testimony? We'll read the record. Yes, with regard to the sentencing hearing and the thing about the 26 assaults and the four against the staff and the four assaults against all the inmates, the first step in the plain air analysis, which this would have to come under for the sentencing, correct? The judge says, what does it mean to me after that was in the PSI report? And the law on this is if the state wishes to present evidence of arrests not resulting in convictions, which this is an example, the state must provide competent evidence of the underlying facts of these things. Yes. And the evidence of that other criminal conduct must be presented by witnesses. There were no witnesses. And that evidence of other criminal conduct must be presented by witnesses who can be confronted and cross-examined rather than by hearsay. In this case, the record shows the trial court did not consider the reference while the court acknowledged the information was contained in the report. It specifically stated that there was no information as to the nature and extent and timeliness of the reports. What does it mean to me? It means that he's an assistant for 26 assaults against staff and four assaults against fellow inmates. Do I know the nature and extent of those questions? Do I know the details of the questions? Do I know the timeliness of those questions? I don't. I understand your point, Your Honor. But then on the motion, on the hearing on the motion to reconsider, the judge then again mentioned the history of the 26 staff assaults as one of the things he considered in aggravation. He actually said that? I believe so. Would there specifically be the same thing? These are the things I considered, and that was listed as one of the factors in aggravation. I'm not going to look at his exact statement, because at the sentencing hearing itself, he said, I don't know what happened. But I'll look at the record on the motion. Okay. And that statement would be evidence, so to speak, from the record, that he knows the law. Yes, yes, certainly. But nevertheless, he's saying, I considered this, and it does look from at the sentencing hearing that he's acknowledging that, look, there are some reliability issues with this information. But then again, at the motion to reconsider, he lists it as one of the things he's considered in aggravation. Because at the sentencing hearing, it appears he recognizes that there's some problems with this. He doesn't know the details, and the law is that if you don't have witnesses testifying, you can't consider that. That's right. Thank you, counsel. Thank you. I guess we take a break for lunch. We're only on the second case, Robert. We eat early and eat often. Although I'll break for lunch. All right.